MICHAEL KIERNAN et al.

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY and HENRY BYRNE.

[Decided June 10th, 1909.]

1. Equity has jurisdiction to protect and enforce legal rights in real estate, which defendants deny, if the court finds that the right exists and that complainant has not an adequate remedy at law or the threatened damage is irreparable.

2. Where complainants claimed title to land which defendant city alleged was a duly dedicated street, they could not maintain a suit to enjoin defendants from laying sewer pipe in the street, complainant's remedy by ejectment being adequate and the damages not being irreparable.

Application for preliminary injunction. Heard on bill and proofs, and answer and proofs.

Messrs. *Collins & Corbin,* for the complainants.

Mr. *Warren Dixon,* corporation counsel, for the mayor and aldermen of Jersey City, defendants.

GARRISON, V. C.

This is a bill to restrain the defendants from laying sewer pipe through certain lands.

In 1854, one Brinkerhoff was the owner of certain lands in' Jersey City. He conveyed to one Kiernan. Kiernan sold to S. W. and Joel I. Hoyt, who gave to him a mortgage dated the 12th of February, 1868. Kiernan, on the 23d of September, 1880, began a foreclosure suit on this mortgage, and on the 8th of August, 1881, purchased the property at sheriff's sale under the foreclosure decree.

Kiernan died, and his wife, by will, became the owner of the property, and upon her death her heirs-at-law succeeded to her rights and are the present complainants.

The projected line of sewer pipe runs through a portion of the land above mentioned.

The complainants seek an injunction to prevent the pipe from being laid as projected.

The city claims that the projected line of pipe runs through a portion of the lands which had been dedicated to the city under the name of York street. It shows by its proofs that about 1855 a plot of the lands in question was made showing York street, and that this map was filed' in October of 1868; that in 1874, S. W. and J. I. Hoyt, the owners of the property, filed another map thereof also showing York street. The complainants contend, with respect to the first map, that it was made after Kiernan purchased from Brinkerhoff and was not made by Kiernan, and therefore does not bind him; that as to the second map, it was made by the Hoyts while they were owners, but subsequent to the time that they had mortgaged the same to Kiernan, and that the mortgage was subsisting and unpaid at the time of the dedication. They therefore claim that, as to them, the dedication is ineffectual, which is so, if they have not, by acquiescence or ratification, shown an intention to join in the dedication, or so conducted themselves as to be bound by it.

To this the city responds that in the foreclosure of the mortgage, which the Hoyts had given to Kiernan, the latter made Jersey City a party, and, in the bill, recites many conveyances

made by the Hoyts in which York street, as shown on the map aforesaid, is mentioned, and that the map aforesaid is constantly mentioned in the bill of complaint in describing mortgages and deeds; and, further, that in the said bill of complaint, Kiernan charges that the city, on or about the 16th of April, 1870, took proceedings for the opening of Corneliuson avenue, describing the land purported to be covered by Corneliuson avenue, and naming "York street as proposed" as one of the stations, and charges that the said land included in the said proceedings with respect to Corneliuson avenue was a portion of the land included in the mortgage, and that the mortgagee has not released or discharged any portion of the said mortgaged premises; and, further, that by virtue of the proceedings the city claims to have some claim to the land above described, namely, the land included in the proposed Corneliuson avenue; but the complainants charge that the city, if it has any claim, has it subsequent to the mortgage aforesaid.

It will be observed in passing that the proceedings which the city took were in 1870, and were, therefore, prior to the dedication map made by the Hoyts in 1874.

The city contends that Kiernan, the mortgagee, by this bill, discloses that he had complete knowledge of the Hoyt dedication map of 1874, and, by specifically charging, as against the city, a lien only with respect to Corneliuson avenue under proceedings begun before the Hoyt map acquiesced in or ratified the dedication of "York street as proposed" on the Hoyt map; that, by only challenging such rights as the city claimed in proceedings begun before the Hoyt map was filed, the complainants showed an intention to acquiesce in and ratify the dedication of the streets as shown on the Hoyt map. There is no charge in the bill challenging the city's right to the streets shown on the Hoyt map.

The effect of the foreclosure and of the recitals of the bill, &c., is differently construed by the complainants.

The city further shows, by its proofs, that on an official assessment map made in 1894, this property appears with York street delineated as on the earlier Hoyt map, and that since that date (1894) the lands have been assessed to the owners on

each side of York street—that is, the lands were divided into two plots, one on each side of York street, and York street was recognized in the tax assessments as a street and not assessed for. It further shows that the owners, seeking a reduction of these taxes, had them referred to the Martin act commissioners, which, the city claims, was a further recognition by the owners of the existence of the street.

It will be seen from the foregoing that the question is whether the city has a legal right to treat the land in question as a street and place sewer pipes under the soil thereof. The city contends that it has; the complainants, that it has not.

The contest is purely over a legal right. The complainants contend that their legal right, though formally disputed, is yet clear on facts which are not denied and legal rules which are well settled; and, therefore, this court should protect and enforce it.

It is true that this court has jurisdiction, under certain circumstances, to protect and enforce legal rights in real estate; and that it will, in such cases, exercise its jurisdiction, notwithstanding that the defendants may raise a question as to the legal right of the complainant, if the court finds, upon the facts and the law, that the complainant has the legal right he asserts and that it is a proper case for the interposition of equity. *Hart* v. *Leonard (Court of Errors and Appeals, 1886), 42 N. J. Eq. (15 Stew.) 416.*

But the cases and circumstances in which this jurisdiction is exercised are those in which the remedy at law is inadequate or the threatened damage is irreparable. *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge (Vice-Chancellor Emery, 1896), 55 N. J. Eq. (10 Dick.) 141; affirmed, Id. 593; New Jersey Junction Railroad Co.* v. *Woodward (Chancellor Magie, 1900), 61 N. J. Eq. (16 Dick.) 1.*

I do not stop to consider whether certain of the classes of cases set forth in *Hart* v. *Leonard* are examples of or exceptions to the rule; they are cases where one, under color of statutory right, attempts to appropriate the land of another without complying with the conditions precedent, cases to stay waste, to prevent multiplicity of suits, to protect contractual rights in

real estate, and to protect one's dwelling from injuries rendering its occupancy insecure or uncomfortable. The complainants' case here does not fall within any of these classes, and they must, as has been before pointed out, show that the legal remedy is inadequate, the threatened damage irreparable.

The case of *Delaware, Lackawanna and Western Railroad Co.* v. *Breckenridge, supra,* is dispositive of this question. In that case the same subject-matter was involved, namely, pipes laid under the surface of the soil. It was there held that the remedy by ejectment was adequate, and the damage was not irreparable.

Both upon reason and authority, therefore, the complainants fail to show a proper case for the exercise of the jurisdiction invoked.

Much stress was laid at the argument and in the brief of the complainants upon the cases which hold that the exerciser of the right of eminent domain will be held to a strict compliance with all conditions precedent, and that a court of equity will protect the landowner against the improper exercise of such right. This is undoubtedly the law, but is inapplicable to the case at bar. The city in this case is not attempting to take this land for a street in virtue of any statutory right, or by the exercise of any power of eminent domain, but is claiming a legal right to take the street by virtue of dedication.

So far as this case is concerned, if the city has not the legal right which it claims is vested in it by virtue of the dedication, it has no legal right whatever. If it has that right, its conduct is justified. Whether or not it has that right is a legal question which, in this case, should be left to the determination of the legal tribunals, since the remedy there is adequate, the damage which is threatened not being irreparable.

I shall deny the application for a preliminary injunction in this suit.